## KOSACK *v.* JOHNSON.

---

PARTY WALLS; EQUITY; INJUNCTION.

1. The fact that a lot owner has placed less than one half of a wall upon his neighbor's land will not preclude the latter from using the wall as a party wall.
2. A lot owner who has built a wall beyond the limits of his lot cannot

maintain a bill in equity to enjoin his neighbor from using the wall as a party wall, on the theory that his lot and that of his neighbor are separated by a narrow strip of land, the record title to which is in a third person but the fee title to which is in the complainant by adverse possession, and upon which strip part of the wall rests; where such third person is not a party to the suit.

3. A bill in equity for an injunction by a lot owner to prevent the use as a party wall, by the defendant, of a wall partly on the complainant's land, is maintainable on the ground that the defendant is not an adjoining owner, where it appears that the defendant is not the owner of the land adjoining complainant's lot, upon which the other part of the walls rests, but that such strip of land belongs to a third person, not a party to the suit.

No. 2301.   Submitted November 10, 1911.   Decided January 2, 1912.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, dismissing a bill for an injunction.                              *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District of Columbia in equity, holding that the walls on the south sides of the buildings owned by plaintiff, Edward Kosack, No. 521 Tenth street, this city, are party walls between plaintiff's property and that of defendant E. Olivia Johnson and W. W. Souder, No. 519 Tenth street, and dismissing plaintiff's petition for an injunction to restrain defendant from using the walls as such, and from constructing a party wall along said line in the intervening space between plaintiff's walls.

It appears that what was originally lot number 11, square 377, described in the plat herewith inserted within the lines A-B-C-D was divided into sublots 28 and 29. The dividing line was irregular, and is described on the plat by the lines E-F-G-H. March 14, 1871, the then owner of lot 29 deeded to the owner of lot 28 a strip $4\frac{1}{2}$ inches wide, extending east from the west line 14 feet, 6 inches, to the jog in the original line, described on the plat as within the lines K-E-F-M. The same day the owner of lot 28 deeded to the owner of lot 29 a strip 2 feet, 3 inches wide, along the north side of lot 28, from the jog to the east line thereof, 70 feet, 6 inches, described on the plat within the lines G-N-O-H. This conveyance established the bounds of lot 29 as they now exist, as shown on the plat within the lines A-K-M-N-O-B. March 18, 1873, one Louisa Clements, the then owner of lot 28 deeded to one Henry Schmidt all that portion of original lot number 11 appearing on the plat within the lines E-D-C-H-G-F. There is a manifest error in the description in this deed, since it includes the strip within the lines G-N-O-H, which had been conveyed by former conveyance to the owner of lot 29. This error, however, is immaterial, since Clements could not convey to Schmidt property which she did not own. December 30, 1878, Clements deeded to Schmidt the strip shown on the plat embraced within the lines K-E-F-M, thus vesting title in Schmidt to all that portion described on the plat within the lines K-D-C-O-N-M. June 10, 1881, Schmidt conveyed to one Diebitsch that portion described on the plat within the lines E-D-C-Y-X-F, leaving in Schmidt the title to the strip within the lines K-E-F-M, and the strip within the lines N-X-Y-O. Diebitsch conveyed to one Miller on May 26, 1909; and Miller conveyed to the defendant Johnson on August 9, 1909, the portion of said lot above described, as conveyed by Schmidt to Diebitsch, still leaving the title to the above described strips in Schmidt. It thus appears that Schmidt owns an intervening fee between the properties of plaintiff and defendant.

Plaintiff's walls, which defendant seeks to use as party walls, extend along the south side of plaintiff's lot from the

west line east a distance of 32 ⁸⁷⁄₁₀₀ fee, and from the east line west a distance of 20 feet, leaving an intervening space of 32¹³⁄₁₀₀ feet. Defendant seeks to use these walls as party walls, and to construct a party wall along the intervening space.

*Mr. Leigh Robinson* and *Mr. Holmes Conrad* for the appellant.

*Mr. Edward H. Thomas* and *Mr. William Henry White* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court.

It is apparent that the existing walls of plaintiff and the portion defendant purposes to construct will have to be considered separately.

We will examine, first, the right of defendant to use plaintiff's walls as party walls. Plaintiff's own description of his lot, the buildings thereon, and the walls, is set out in his petition, with great particularity. This description, except as to the dimensions of the lot, is supported by the evidence, and is as follows: "Beginning with the northwest corner of said lot (lot 11) and running thence east 85 feet, thence south 17 feet, thence west 70 feet, 6 inches, thence south 1 foot, 1½ inches, thence due west 14 feet, 6 inches, thence north 18 feet, 1¼ inches, together with all the improvements thereon. That at the time complainant purchased said lot in 1878, it was improved by a three-story and cellar brick building which extended across the entire front of said lot, and running back to the depth of 32.87 feet. That portion of the south of this building, beginning at the southeast corner of said lot and extending back 14 feet 6 inches, was 9 inches in thickness and built with its south face 0.34 feet south of complainant's south line. The balance of the south line of said building was built of an irregular thickness, beginning at a point 14 feet 6 inches east of the southwest corner of said lot, and with a thickness of 1.51 feet thick, and tapering off until, at the rear end of said

building, it was only 0.81 of a foot thick; the south face of said portion of said wall extended over complainant's south line to the extent of $2\frac{1}{2}$ inches, at its easternmost end, and gradually increased until at its westernmost end,—namely, at a point 14 feet 6 inches from the southwest corner of said part of said lot,—its south face is $9\frac{3}{4}$ inches south. In 1888, complainant built on the rear or eastern end of his property a three-story brick structure, used as a shop, with its south wall 12 inches thick; this wall begins at the southeast corner of said described portion of said lot, and runs along its south line west for a distance of 20 feet, with the south face of said south wall at its easternmost end $\frac{1}{2}$ of an inch south of said described south line, and gradually increases until at its westernmost end it reaches 3 inches south." The dimensions of the walls here given are not with reference to the south line of plaintiff's lot, as shown by his title, but with reference to the south line of the Schmidt strip, showing that the walls at all points extend south of the south line of Schmidt's strip on to the undisputed premises of defendant.

The regulation as to party walls in this District authorizes a property owner to construct a party wall one half on his own land and one half on the land of his neighbor. The servient owner may then, at any time, use the wall for the purpose of attaching a building thereto, by paying the dominant owner one half of the cost of the wall. The wall thus becomes a party wall solely at the will of the dominant owner, by reason of his extending it on to the land of his neighbor. He may place one half of the wall thereon, but, if he elects only to appropriate a smaller fraction, he creates none the less a party wall. The fact that he chooses to take less is his own option, and will not prevent the servient owner from using the wall. The act of the dominant owner in placing any portion of the wall on the land of the servient owner estops him from preventing its use as a party wall. *Western Nat. Bank's Appeal,* 102 Pa. 171.

This being true, plaintiff has placed himself beyond the point where he can complain of the action of defendant. If his lot, as he alleges in his petition, extends now, by right of posses-

sion, to the south line of the Schmidt strip, he still has built his walls so that defendant can assert an interest therein to the extent of using them for party walls. On the other hand, if the title to the strip is still in Schmidt, as must be held, since he is not a party to this action, plaintiff cannot avail himself of his trespass upon Schmidt's property to estop defendant, nor can be set up Schmidt's intervening fee to prevent defendant from using the walls which he has extended on to defendant's land. Whatever complaint Schmidt might justly make cannot be considered in his absence. Neither can plaintiff, in advancement of his own interest, make it for him.

Plaintiff in his petition is claiming adverse possession against Schmidt, but Schmidt is not a party to this action, and that fact alone eliminates all question of adverse possession. Conceding that, in the deed from Schmidt to Diebitsch, an erroneous description was inserted, due apparently to its having been copied from an old deed, with other conveyances intervening, the error, when corrected, would seem to inure to the benefit of defendant, rather than to plaintiff. This error, however, cannot be corrected without the presence of Schmidt.

We now approach a more difficult feature of the case,—the right of defendant to erect a new party wall along the intervening space of $32^{13}/_{100}$ feet between plaintiff's walls, and connecting therewith, in such manner as to make a continuous party wall the full length of the lots. Defendant purposes to construct his wall across the Schmidt strip and about $^{22}/_{100}$ of a foot on to plaintiff's ground. The situation here is reversed. Defendant is the dominant owner, seeking to invade plaintiff's land, against his objection and over the intervening fee of Schmidt. Plaintiff can avail himself of any legal objection to the invasion of his property by defendant, and the objection interposed, though apparently an afterthought, but one which we cannot, in equity, overlook, is that plaintiff and defendant are not adjoining property owners. The dominant and servient estates must adjoin before the dominant owner can irresistibly invade the land of the servient owner. Here, plaintiff can properly confront defendant with the intervening fee of

Schmidt. Could plaintiff's contention that he has acquired the strip of Schmidt by adverse possession be sustained, the barrier to defendant would be removed, or had defendant first brought an action for the reformation of her title, so as to extinguish the title of Schmidt,—which would seem to be the proper solution of this difficulty,—plaintiff would be in no position to oppose the construction of the wall by defendant. But so long as the fee of Schmidt remains intact, plaintiff may object to the construction of the wall, on the ground that defendant is not an adjoining owner. If, as in the case of plaintiff's walls where no objection was interposed by defendant, plaintiff was not here objecting, then both parties would be subject alone to the intervening right of Schmidt. But the opposition of plaintiff forms the basis of this action.

The decree is reversed, with costs assessed equally between the parties, and the cause is remanded for further procedings not inconsistent with this opinion.

*Reversed and remanded.*